IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MATTHEW PAUL
MARKOVICK,

                    Plaintiff,

          v.                        CASE NO.  10-3257-SAC

ROGER WERHOLTZ, Secretary
of Corrections, et al.,

                    Defendants.

### MEMORANDUM AND ORDER

     This pro se civil rights action was filed pursuant to 42 U.S.C. § 1983 by an inmate currently located in Work Release at the Hutchinson Correctional Facility, Hutchinson, Kansas (HCF).  The court screened the original complaint containing 12 counts, and issued an order requiring Mr. Markovich to submit an initial partial filing fee, which he has done.  In addition, the court explained the deficiencies in the complaint, and ordered plaintiff to "cure the deficiencies" or "otherwise show cause why this action should not be dismissed for the reasons stated."  In response to the court's screening order, Mr. Markovich has submitted: Response to Court's Order (Doc. 6), request to amend complaint, an Amended Complaint, request for appointment of counsel, request for reconsideration, and another objection to filing fees.  The requests, rather than being appropriately submitted as separate motions, are paragraphs within plaintiff's Response (Doc. 6).  The clerk noticed the imbedded motions, produced a copy of plaintiff's Response, and docketed it as

plaintiff's motions (Doc. 7).[1]


**<u>SCREENING</u>**

A first Amended Complaint may be filed without leave of court. Accordingly, plaintiff's motion to amend complaint is granted.  The Amended Complaint completely supercedes the original complaint.  As a consequence, the original complaint in this case is no longer under consideration.

Because Mr. Markovich is a prisoner suing state officials, the court is required by statute to screen his Amended Complaint and to dismiss the Amended Complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).  The court has considered all materials filed together with the court's prior screening order and takes judicial notice of other cases filed by Mr. Markovich.  The court finds that plaintiff has cured one deficiency by naming different defendants and alleging their personal participation in the acts or events of which he complains. The court further finds that plaintiff has not cured another significant deficiency discussed in the screening order, that of his failure to allege facts sufficient to state a federal constitutional

---

[1]     A motion seeking a particular court order should be filed as a separate pleading and each motion must state with particularity the grounds for seeking the order and the relief sought.  Federal Rules of Civil Procedure, Rule 7(b)(1)(B) & (C).  In addition, each motion must have the caption of the case and the title of the motion at the top of the front page.  Fed.R.Civ.P. Rule 10(a). The title should suggest what court action is requested in the motion, for example, "Motion for Appointment of Counsel."  The clerk has no duty to parse every page of materials submitted to determine whether motions have been improperly imbedded therein.  Such imbedded motions may not get docketed as motions and as a result may not be recorded and tracked as pending motions.

violation.  In this regard, Mr. Markovich has done little more than repeat the allegations made in his original, defective complaint. The court concludes that this action must be dismissed pursuant to § 1915A(b)(1) and § 1915(e)(2)(B)(ii) on account of plaintiff's failure to allege facts to state a federal constitutional claim. This dismissal counts as a strike against Mr. Markovich.[2]

## ALLEGATIONS AND CLAIMS

In his Amended Complaint, plaintiff lists 10 counts.  Five of those counts are based upon events that allegedly occurred while he was confined at the Larned Correctional Mental Health Facility, Larned, Kansas (LCMHF).   Two counts are based on events that allegedly occurred while Mr. Markovich was confined at the Ellsworth Correctional Facility, Ellsworth, Kansas (ECF); and three counts are based on events that allegedly occurred while he was confined at the Hutchinson Correctional Facility, Hutchinson, Kansas (HCF).  Kansas Department of Corrections (KDOC) records indicate that Mr. Markovich was confined at the LCMHF from January 21, 2010 to May 18, 2010, when he was moved to the ECF; and that he was transferred to the HCF on November 16, 2010.  Plaintiff claims cruel and unusual punishment

---

[2]    Section 1915(g) of 28 U.S.C. provides:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court that is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Id.  If Mr. Markovich accumulates two more strikes, he will be required to "pay up front for the privilege of filing . . . any additional civil actions," unless he makes a credible showing that he is in "imminent danger of serious physical injury."  28 U.S.C. § 1915(g); Jennings v. Natrona County Detention Center, 175 F.3d 775, 778 (10th Cir. 1999).

based upon allegations regarding his reclassification and interprison transfer, a disciplinary report, destruction of sunglasses, denial of medical treatment, and his temporary assignment to a max unit. He claims denial of due process based upon allegations of withholding of good-time credit and incentive level, denial of copies of legal papers, and denial of adequate law library time. He claims violation of First Amendment rights based upon allegations of retaliation for using the grievance process. Plaintiff seeks compensatory and punitive damages.

## GENERAL LEGAL STANDARDS

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997). The court employs the same standard for dismissal under § 1915(e)(2)(B)(ii) as that used for motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Kay v. Bemis, 500 F.3d 1214, 1217-18 (10th Cir. 2007). All well-pleaded allegations in the complaint are accepted as true. Anderson v. Blake, 469 F.3d 910, 913 (10th Cir. 2006). However, the complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action."   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).   To avoid dismissal, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level," and there must be "enough facts to state a claim to relief that is plausible on its face." Id. at 555, 570 (citation omitted). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. Id. at 558.

**IMPROPER JOINDER NOT CURED**

Plaintiff was notified in the court's prior screening order that he had improperly joined parties and claims in this action.   He was ordered to cure this deficiency.   In his Amended Complaint, he sues several different defendants employed at three different prison facilities, again based upon events that allegedly occurred at these different locations during different time frames.   The court will not repeat the discussion from its prior order regarding improper joinder.   Suffice it to say that Mr. Markovich has utterly failed to allege facts showing any connection between acts by different defendants alleged to have occurred during three different time frames at three different locations.   His statement in his Response that 2 of his 12 counts are based upon the same facts does nothing to cure the improper joinder of many of his other counts.   His statement in his Response of disagreement with the court's ruling as to joinder does not amount to a showing of sufficient cause as to why his improperly joined claims should not be dismissed.   The court is unable to proceed upon one or a set of plaintiff's claims that might be properly joined, for the reason that Mr. Markovich has

provided no indication as to which of his properly-joined claims he would choose to retain in this single action.  This action could be dismissed for failure of plaintiff to comply with the court's order requiring him to cure this defect.  Were it dismissed for this reason alone, the dismissal would be without prejudice to plaintiff's filing a new action with a complaint that does not include improperly-joined parties or claims.  However, because plaintiff has also failed to cure other substantial defects, the court believes that the interest of judicial economy is best served by dismissal of this action based upon the additional grounds as well.

**DEFENDANTS**

Roger Werholtz and Correct Care Solutions were named as defendants in the original complaint and are not named in the Amended Complaint.  It necessarily follows that they are no longer defendants in this action.  Accordingly, this action is dismissed and all relief is denied as against these defendants.

**FAILURE TO ALLEGE FACTS SUFFICIENT TO STATE A CLAIM**

**EVENTS AT THE LMHCF**

The court first discusses plaintiff's claims that are based upon events alleged to have occurred at the LMHCF.  This is not to suggest that all these claims are properly joined.  To the contrary, plaintiff does not allege facts showing that Count I against defendant Diest is related to or arose from the same transaction as Counts II and V against defendants Schoonover and Green.  Nor does he show that his Counts XI and XII against defendant Caro and the

three nurses are related to Counts I, II or V.

**Count I.**

In his original complaint, plaintiff asserted that his First Amendment rights were violated based upon remarks made at the LMHCF by defendant Diest.  As factual support for this claim, he again alleges in his Amended Complaint that on March 30, 2010, Diest remarked to him regarding his use of the grievance process to stop whining and asked if he knew "what happens to inmates that complain."  In the court's screening order, plaintiff was advised that he has no federal constitutional right to a prison grievance procedure under the First Amendment, and that his own filings showed that his First Amendment right to petition the Government had not been violated. The court found that plaintiff's claim of a First Amendment violation was refuted by his list of cases he had filed and his exhibits of grievances he had submitted.  Plaintiff alleges no additional relevant facts showing how his right to petition the government was denied by the remarks of defendant Diest.  Instead, he merely registers his disagreement with the court's holding that he has no constitutional right to a grievance procedure.

The court also found in the screening order that even if the remarks were made by Diest and reasonably interpreted by plaintiff as a threat, a verbal threat by a prison employee does not amount to a federal constitutional violation.  In his Response, plaintiff states that he agrees with this ruling.  He has changed this Count in his Amended Complaint to assert that defendant Diest violated his First Amendment rights "by retaliating against him for utilizing the grievance procedure," which he claims is "a protected procedure."

In order to establish a constitutional claim of retaliation, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action." See Scott v. Churchill, 377 F.3d 565, 569 (6th Cir. 2004). It has been held that the filing of frivolous grievances while in prison does not amount to protected First Amendment activity. See Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000). It has also been held that the conduct of an inmate who presents grievances in a disruptive manner is not protected by the First Amendment. See Watkins v. Kasper, 599 F.3d 791, 798 (7th Cir. 2010). This court agrees with these holdings.

Plaintiff does not describe the content of any of the grievances he filed immediately prior to Diest's remarks. Thus, their non-frivolous nature is not evident. Even if plaintiff had alleged facts to establish elements (1) and (3), his allegations that Diest verbally taunted and threatened him, taken as true, fail to establish the "adverse action" element. "Verbal harassment, threats, or taunts do not rise to the level of retaliation." See Strope v. Gibbens, 2003 WL 1906458, *5-*6 (D.Kan. Apr. 17, 2003)(unpublished)(It is settled that a threatening or abusive language or other verbal harassment by prison officials does not support a claim under Section 1983); Walker v. Spence, 2009 WL 3074612, *9-*10 (D.Colo. Sept. 18, 2009)(unpublished)(citations omitted); Zarska v. Higgins, 171 Fed.Appx. 255, 259 (10th Cir. 2006)(unpublished). The only facts upon which this Count still rests are the two statements by defendant Diest. There is nothing to suggest that these statements amounted to adverse acts sufficient

to "chill" plaintiff's or an ordinary inmate's resolve to file grievances.  The court finds that the sparse facts alleged by plaintiff, taken as true, fail to state a federal constitutional claim of retaliation against defendant Diest.

**Count II**

As Count II in his Amended Complaint, plaintiff asserts that his due process rights were violated at the LCMHF.  He claims that defendants Schoonover and Green "withheld" his good-time credit and incentive level for dismissed disciplinary actions.  As factual support, he alleges as follows.  In March 2010 he was accused of refusing a program and the matter was dismissed on administrative appeal.  Defendant Schoonover told him that she and defendant Green "decided to take 100% of (his) good time and (his) incentive level" and that "just because the disciplinary action was dismissed does not mean that you are not guilty."

Mr. Markovich cured one defect in this claim by naming actual participants as defendants.  However, he did not cure the claim's other defects discussed in the screening order.  As to his original complaint, the court found that plaintiff's allegation that his due process rights were violated by the "withholding" of his good-time credits and incentive level was conclusory.  Plaintiff has not cured this defect.  He still fails to allege sufficient facts to show a denial of due process.  He does not reveal how much good-time was withheld or even the date and duration of the withholding.  He provides no description of the circumstances surrounding the decision such as how he received notice, what the notice provided, or how the administrative decision by Schoonover and Green regarding

his good-time and his incentive level was recorded and implemented. Plaintiff's allegations that he was charged with refusing a program, initially found guilty, and the guilty finding was overturned on administrative appeal evince no federal constitutional violation. However, he implies that the administrative decision to "withhold" his good-time and incentive level was somehow connected to the dismissed disciplinary sanction by making the conclusory statement that defendants Schoonover and Green "punished him anyway."  The withholding of good time, as opposed to its forfeiture, may be ordered by a prison official pursuant to an administrative process other than a disciplinary proceeding.  Thus, the withholding of which plaintiff complains could have resulted from a classification decision, as plaintiff's corollary claim about his incentive level suggests, to which the procedures mandated for disciplinary proceedings do not apply.  Mr. Markovich does not allege that he was sanctioned with forfeiture of a certain amount of good-time credits at the March disciplinary hearing, that this sanction was overturned, but that defendants refused to restore these credits. His allegations indicate instead that defendants Schoonover and Green made a determination as to his incentive level, which resulted in his not being eligible for good-time credits.  In short, plaintiff does not describe what process was due when the defendants determined that his incentive level and good-time would be "withheld" and what element of that process was denied. Accordingly, the court finds he has failed to allege facts that plausibly indicate a denial of due process in connection with this administrative decision.

Plaintiff has also failed to cure the defects found by the

10

court upon screening that this claim in effect seeks his earlier release, for which the exclusive federal remedy is a habeas corpus petition; and that the intervention of a federal habeas court cannot be invoked until he has exhausted all adequate remedies available within the state. Mr. Markovich cannot evade the "condition precedent" to invocation of federal judicial relief of exhaustion of state remedies "by the simple expedient of putting a different label" on his pleadings. Decisions of the United States Supreme Court beginning with Preiser v. Rodriguez, 411 U.S. 475, 489 (1973), bar plaintiff from proceeding under § 1983 on a claim of wrongful withholding of good time credits based upon "the alleged unconstitutionality of state administrative action" for the reason that this claim falls within the more specific and limited habeas corpus remedy. In Preiser, the Supreme Court considered the situation "where state prisoners have challenged the actual duration of their confinement on the ground that they have been unconstitutionally deprived of good-conduct-credits, and where restoration of those credits would result in their immediate release from prison or in shortening the length of their confinement." Preiser, 411 U.S. at 482. In Heck v. Humphrey, 512 U.S. 477, 480 n. 2, 487 (1994), the Supreme Court held that when a state prisoner seeks "money damages premised on an unlawful conviction" under § 1983, the district court must consider whether judgment in favor of the prisoner would necessarily imply the invalidity of his conviction, and if it would, the complaint must be dismissed unless the prisoner can demonstrate that his conviction has already been invalidated. Even a prisoner who has fully exhausted state remedies has no cause of action under § 1983 unless and until the conviction

11

is invalidated.  Id. at 489.  The Court's language is instructive:

> [P]etitioner seeks not immediate or speedier release, but
> monetary damages, as to which he could not "have sought
> and obtained fully effective relief through federal habeas
> corpus proceedings."  (Citations omitted).  In dictum,
> however, Preiser asserted that since a state prisoner
> seeking only damages "is attacking something other than
> the fact or length of . . . confinement, and . . . is
> seeking something other than immediate or more speedy
> release[,] . . . a damages action by a state prisoner
> could be brought under [§ 1983] in federal court without
> any requirement of prior exhaustion of state remedies."
> 411 U.S., at 494, 93 S.Ct., at 1838. That statement may
> not be true, however, when establishing the basis for the
> damages claim necessarily demonstrates the invalidity of
> the conviction.  In that situation, the claimant can be
> said to be "attacking . . . the fact or length of . . .
> confinement," bringing the suit within the other dictum of
> Preiser: "Congress has determined that habeas corpus is
> the appropriate remedy for state prisoners attacking the
> validity of the fact or length of their confinement, and
> that specific determination must override the general
> terms of § 1983."  Id., at 490, 93 S.Ct., at 1836.  In the
> last analysis, we think the dicta of Preiser to be an
> unreliable, if not an unintelligible, guide: that opinion
> had no cause to address, and did not carefully consider,
> the damages question before us today.

Id. at 481-482.  The Court in Heck went on to hold that a monetary

damages claim challenging a state conviction is not "cognizable

under § 1983 at all" because "the hoary principle that civil tort

actions are not appropriate vehicles for challenging the validity of

outstanding criminal judgments applies to § 1983 damages actions

that necessarily require the plaintiff to prove the unlawfulness of

his conviction or confinement."  Id. at 483-86.  They further held

that "in order to recover damages for . . . harm caused by actions

whose unlawfulness would render a conviction invalid, a § 1983

plaintiff must prove the necessary element that the conviction has

already been reversed, expunged or otherwise invalidated," and that

a "claim for damages bearing that relationship to a conviction . .

. that has not been so invalidated is not cognizable under § 1983."

Id. at 486-87.   In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court applied the principles in Heck to a state prisoner's due process challenge under § 1983 to the validity of procedures used to deprive him of good-time credits.   Balisok, like Mr. Markovich here, did not request restoration of the lost credits, and instead "limited his request to damages for depriving him of good-time credits without due process."   Id. at 644, 645.

Applying the foregoing principles to the case at hand, the court finds that a judgment in favor of Mr. Markovich on his claim that defendants Schoonover and Green violated due process when they made the decision to withhold his good-time credits "would necessarily imply the invalidity of" that administrative decision to withhold credits.   Plaintiff does not show that this decision has already been overturned.   It follows that this claim is not cognizable under § 1983.   Id. at 648.   Plaintiff was plainly told in the screening order that he could not raise this habeas claim in this civil rights action, and that all state remedies had to be exhausted before he could raise this habeas claim in federal court. He has not alleged facts showing that this claim is not habeas in nature and therefore may be raised in a civil rights action.   Nor has he alleged facts showing that he has fully exhausted state remedies.   These defects are not cured by plaintiff's simply insisting that he is seeking money damages rather than restoration of good-time credits.   In sum, this claim is not cognizable in this civil rights action, and plaintiff's sole remedy in federal court is to file a petition for a writ of habeas corpus under 28 U.S.C. § 2241, after having exhausted all available state remedies.   See Preiser, 411 U.S. at 500; Brown v. Smith, 828 F.2d 1493, 1495 (10th

Cir. 1987)(holding that a 28 U.S.C. § 2241 habeas petition is the appropriate means by which to seek the restoration of good-time credits).

**Count V**

In his Count V, plaintiff asserts that he was subjected to cruel and unusual punishment at the LCMHF.  In support, he alleges that in May 2010, defendant Schoonover had him reclassified "from 'minimum custody' to 'medium by exception' for false reasons" and/or "for his utilization of the grievance procedure, or some other unknown reasons."  As a result, "plaintiff was transferred from a minimum security prison where he had many privileges to a medium where he had significantly less incentives."  Plaintiff has once again cured the lack-of-personal-participation defect in this claim by changing defendants in his Amended Complaint but not the defect that his allegations fail to state a federal constitutional claim. He continues to assert this as a cruel and unusual punishment claim based on general allegations that his reclassification to from minimum to "medium by exception" resulted in his transfer to a more secure prison facility where he received fewer incentives and privileges.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).  However, the Constitution "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for

example, use excessive physical force against prisoners.  See Hudson v. McMillian, 503 U.S. 1, 4 (1992).  The Amendment also imposes a duty upon prison officials to provide humane conditions of confinement, meaning they must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984); see also Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976).  To violate the Eighth Amendment, a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347; Farmer v. Brennan, 511 U.S. 825, 834 (1994).  It is "only the unnecessary and wanton infliction of pain" that implicates the Eighth Amendment.  Rhodes, 452 U.S. at 347.  "To the extent that . . . conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id.

Mr. Markovich alleges no "facts which, if proven, would tend to show he was subjected to cruel and unusual punishment." Herrera v. Williams, 99 Fed.Appx. 188, 190 (10th Cir. 2004)(unpublished).[3]  He does not describe any particularly harsh condition of his confinement after transfer and allege how he was injured by that condition.  He alleges only that he was transferred from a prison where he "had many privileges" to one where he has "significantly less incentives."  These general statements regarding privileges do not amount to facts demonstrating a plausible right to relief.

---

[3]     Unpublished opinions are not cited as binding precedent but for persuasive value in accord with Fed.R.App.P. 32.1 and 10th Cir.R. 32.1.

Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009).  Even if plaintiff described certain privileges that were lost, the denial of privileges simply does not amount to a denial of life's necessities or present a sufficiently serious potential for harm.  Nor does the record reveal deliberate indifference on the part of defendant Schoonover to any risk to plaintiff's health or safety.

Plaintiff avoids asserting this claim as a denial of due process.  Even if it were liberally so construed, the facts he alleges do not support such a claim.  As plaintiff was informed in the court's screening order, classification decisions are matters solely within the discretion and expertise of prison officials, and generally do not involve an interest independently protected by the Due Process Clause.  Trujillo v. Williams, 465 F.3d 1210, 1225 (10th Cir. 2006)(Classification of a plaintiff into segregation does not involve deprivation of a liberty interest independently protected by the Due Process Clause.)(citing Bailey v. Shillinger, 828 F.2d 651, 652 (10th Cir. 1987)(citing Hewitt v. Helms, 459 U.S. 460, 468 (1983)); Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir. 1994)(Colorado state laws and regulations do not entitle inmates to remain in the general population absent certain conduct.); see Thomas v. Gunja, 110 Fed.Appx. 74, 75-76 (10th Cir. 2004)(unpublished)(transfer to a restrictive unit of another prison did not create atypical circumstance for purpose of creating a liberty interest); see also Meachum v. Fano, 427 U.S. 215, 228 (1976)(Due Process Clause does not bar inmate's transfer to facility with more restrictive conditions of confinement.).  Thus, it is clear that a decision by a prison official to transfer an inmate to

a different security level, even one that results in more restrictive conditions, does not implicate the Due Process Clause of the Fourteenth Amendment. Sandin v. Conner, 515 U.S. 472, 486 (1995). This is because "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence," and even "administrative segregation is the sort of confinement . . . inmates should reasonably anticipate receiving at some point in their incarceration." Hewitt, 459 U.S. at 468. Based on this reasoning, the Supreme Court held that an inmate's challenges to classification decisions and transfers fail to state a claim under § 1983 absent a showing that the inmate has been subjected to conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484; Templeman, 16 F.3d at 369; see also Wilson v. Jones, 430 F.3d 1113, 1117 (10th Cir. 2005).

Plaintiff's allegation in his Response that "this scenario is clearly significant and atypical" is completely conclusory and utterly fails to make the requisite showing. He makes no attempt to show that a liberty interest in a certain security classification has been created under Kansas law. Nor could he, as it has clearly been held otherwise. Plaintiff's added allegations that he was reclassified and transferred "for false reasons" and/or "for his utilization of the grievance procedure, or some other unknown reasons" are likewise nothing more than conclusory statements. He was not entitled under the Constitution to any reasons prior to a security reclassification or an interprison transfer.

Furthermore, even if this were liberally construed as a claim

of retaliation, the few facts that plaintiff alleges are insufficient to state such a claim. "An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Fogle v. Pierson, 435 F.3d 1252, 1264 (10th Cir. 2006)(quotations and citations omitted); Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998). "[I]t is imperative that [a] plaintiff's pleading be factual and not conclusory, so that "[m]ere allegations of constitutional retaliation will not suffice." Frazier v. Dubois, 922 F.2d 560, 562 n. 1 (10th Cir. 1990); see also Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999)("[T]he inmate must allege more than his personal belief that he is the victim of retaliation."). Courts have recognized that, in retaliation claims, the presentation of circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation. See Smith v. Maschner, 899 F.2d 940, 949 (10th Cir. 1990)(holding that the inmate sufficiently supported retaliation claim with "only means available to him-circumstantial evidence of the suspicious timing of his discipline, coincidental transfers of his witnesses and assistants"). To prevail, a prisoner must show that the challenged actions would not have occurred "but for" a retaliatory motive. Baughman v. Saffle, 24 Fed.Appx. 845, 848 (10th Cir. 2001)(citing Maschner, 899 F.2d at 949-50; Peterson, 149 F.3d at 1144).

Mr. Markovich does not provide any chronology of events or any other circumstantial evidence from which the court could plausibly conclude that he was reclassified or transferred in retaliation for protected activities. Indeed, he offers no more than his bare

assertions that he was transferred for his utilization of the
grievance procedure and "the reclassification was used as a vehicle
for harassment."  His allegations that his file "has numerous good
comments" do not establish that an improper motive was the "but-for"
cause of his transfer, since he may be transferred for any number of
administrative reasons.  His bald statement that he was
"reclassified for behavioral problems" when "no behavioral problems
existed" is self-serving, and again not supported by sufficient
allegations of fact.  Cf. Markovich v. Green, 247 P.3d 234, 2011 WL
768044 (Kan.App. Feb. 25, 2011)(K.S.A. 60-1501 petition filed by
Markovich on June 15, 2010, in which he complained of several
disciplinary reports that had been filed against him, one of which
had been dismissed.).  The court concludes that plaintiff's bare,
conclusory assertions do not amount to a statement of facts showing
that "but for" a retaliatory motive on the part of defendant
Schoonover, he would not have been reclassified or transferred.

**Count XI**

In his Count designated as Count XI, plaintiff asserts cruel
and unusual punishment at the LCMHF.  As factual support, he alleges
as follows.  On May 2, 2010, plaintiff "severely injured his ankle
when he got out of bed to use the restroom."  Two hours later when
the medication line opened, he hopped to it "in extreme pain to
report his injury."  Nurse Chesney stated she was not a real nurse,
but she called Nurse Carol.  Nurse Carol said that plaintiff would
be seen in sick call the next day.  Even though plaintiff had
declared a medical emergency, he was not seen immediately.
Plaintiff "hopped in extreme pain" to the officer's station where

Officer Caro called Nurse Webster, who said the same thing as Nurse Carol. Caro told plaintiff to go to his cell. Plaintiff apparently refused, stating that he could not walk without extreme pain. Defendant Officer Caro "issued disciplinary actions against the plaintiff for disobeying an order that he could not obey without pain." Mr. Markovich was then taken to the hold in a wheel chair. He did not receive medical attention until three days later. In addition, he did not receive a "required medical exam" before he was taken to the hole. He had filed a complaint for harassment against Caro just 3 days before this incident.

Rather than challenging any disciplinary proceeding based upon these allegations, Mr. Markovich asserts that defendant Caro subjected him to cruel and unusual punishment. However, plaintiff does not adequately describe any condition to which he was subjected at the time of this incident that amounted to excessive force or inhumane treatment. None of the facts he alleges suggest "the wanton infliction of pain" by defendant Caro. Instead, plaintiff's allegations indicate that he was taken to the hole by wheelchair, and not forced to walk. In its screening order, the court noted that Mr. Markovich had not alleged facts describing a sufficiently serious injury and, according to his own allegations, had walked to the medicine line and to the officer's station two hours after his alleged injury and immediately prior to refusing to return to his cell claiming an inability to walk. Plaintiff has alleged no additional facts regarding the seriousness of his injury. He has never described any physical symptom, which must have made it obvious to even a lay person that he could not walk and that he required immediate medical treatment. In fact, his own allegations

suggest otherwise.  They indicate that two nurses who considered his alleged injury determined he could wait until the next day to be seen by a doctor and apparently saw no medical reason to restrict his walking.  The court concludes that plaintiff has alleged no facts whatsoever showing that defendant Caro was aware of a substantial risk of harm to plaintiff and yet acted with a "sufficiently culpable" state of mind so as to be liable to plaintiff for a violation of the Eighth Amendment.

Even if the court liberally construed this claim as a due process challenge to the disciplinary report issued by defendant Caro, Mr. Markovich would not be entitled to relief.  This is because, as fully discussed earlier herein, unless and until an inmate has had an administrative decision overturned by the appropriate process, he cannot seek money damages based upon a claim that would necessarily imply its invalidity.  Plaintiff was informed in the court's screening order that if the sanctions imposed in this disciplinary proceeding included loss of good time, he could seek review only by way of a habeas corpus petition; and if loss of good time was not a sanction, he was not entitled to federal court review.  Plaintiff still fails to disclose what sanctions were imposed as a result of this disciplinary action.


**Count XII**

In his Count designated as Count XII, plaintiff asserts a denial of necessary medical treatment in violation of the Eighth Amendment.  He claims that defendants Nurse Carol, Nurse Chesney, and Nurse Webster at the LMHCF were "deliberately indifferent" to his "emergency treatment needs."  As factual support for this claim,

he refers to the supporting facts alleged in connection with the previous Count.

In his original complaint, Mr. Markovich alleged that these three nurses violated his constitutional right to medical care with their negligence, malpractice, and a three-day delay in his being seen at sick-call for his injury. Despite the court advising plaintiff in its screening order that these allegations were insufficient to state a claim under § 1983, he has not alleged any additional facts to elevate this incident to a constitutional violation. His own declaration that his injury required emergency medical treatment is not sufficient to show that his injury was "sufficiently serious" to require emergency attention. He does not describe any substantial injury that resulted from the three-day delay. His mere disagreement with prison medical personnel as to the severity of his injury and the necessity for immediate emergency treatment does not state a federal constitutional claim under the Eighth Amendment. Plaintiff's new allegation that he did not receive "the required medical exam" before being taken to the hole, even if true, presumably is based upon nothing more than a state regulation, and as such does not entitle him to relief in federal court under § 1983.

### EVENTS AT THE ECF

The court discusses plaintiff's claims based upon events that allegedly occurred at the ECF together, and notes that defendant Stroede is alleged to have participated in both counts. Plaintiff has alleged no facts showing that claims based upon the events at the ECF are properly joined with the other claims in his Amended

Complaint.

### Count III

As his Count III, plaintiff asserts that he was subjected to cruel and unusual punishment while confined at the ECF.  In support, he alleges as follows.  In May 2010, upon his transfer to ECF, defendant Cantrel took his sunglasses stating "they are not allowed here."  This was contrary to "KDOC IMPP."  Plaintiff "went to" defendant Stroede for help, and she ordered that the sunglasses be destroyed.

Plaintiff has persisted in seeking damages, in at least three different cases of which this court is aware, based upon the allegation that sunglasses he refused to send out of the ECF were destroyed.  He has cured one defect in this claim by naming an actual participant as defendant instead of a supervisory official but still utterly fails to allege sufficient facts to support the assertion that this somehow subjected him to cruel and unusual punishment.  Plaintiff alleges no additional facts which convince the court that this incident amounted to conduct that is "repugnant to the conscience of mankind."  The facts he alleges do not indicate that he was deprived of adequate food, clothing, shelter, medical care, or that his safety was put in jeopardy.  The loss of his sunglasses clearly did not result in the denial of "the minimal civilized measure of life's necessities."  Nor did it amount to the unnecessary and wanton infliction of pain.  Plaintiff's allegations in his Response that "KDOC IMPP 12-120 mandates that all property is transferable between facilities" and that his sunglasses are allowed at all other KDOC facilities, taken as true, suggest nothing more than a possible violation of a state regulation, which is neither a

federal constitutional violation nor grounds for relief under §
1983.

### **Count IV**

As his Count IV, plaintiff claims that his due process rights
were violated at the ECF.  In support, he alleges as follows.  He
had three appeals pending and needed "about 500 copies of various
documents."  Inmates needing copies had to purchase a "copy ticket"
costing $2.00, which paid for 20 copies.  He was on an incentive
level that allowed him to spend only $40.00 per month.  Defendant
Stroede would not give him a one-time exemption to the rule even
after being shown documents returned by the court unfiled due to
insufficient copies.  Plaintiff was unable to get the copies he
needed.  Many of plaintiff's "filings in the court" were delayed by
1 to 2 weeks, because he had to send documents to his mother to be
copied and returned.

In his Amended Complaint, plaintiff continues to claim that he
was not allowed to "make adequate legal copies" and now asserts that
this violated due process.  He has again cured one defect in this
claim by naming an actual participant as defendant but not the other
defect of failure to allege facts sufficient to state a federal
constitutional violation.  Plaintiff still does not describe what
process was due in this situation, or what element of that process
was not provided.  According to his own account, his request for 500
copies was considered and denied based upon established rules
regarding his incentive level and limitations on free legal copies.
He alleges no facts to state a claim of denial of due process that
is plausible on its face.

Plaintiff appears to intentionally avoid asserting a denial of access claim, the shortcomings of which were discussed by the court in its screening order.  However, even if the allegations in his Amended Complaint were liberally construed as asserting such a claim, they remain insufficient.  Plaintiff alleges no facts from which this court might determine that the three appeals that he had pending were non-frivolous.  Nor does he allege sufficient facts to establish that any of these particular cases was substantially impeded.  He alleges only that the matters were delayed for 1 to 2 weeks, and that he eventually obtained copies through his mother. Plaintiff's statements in his Response, that his "claims and research have been both impeded and frustrated in this case as well as others" are conclusory and thus insufficient to show actual injury.  In addition, they are not even shown to relate to this claim of denial of legal copies.  The same is true of plaintiff's allegations that he has been required to correct deficiencies in his pleadings.  None of these allegations show any actual prejudice to a particular non-frivolous lawsuit file by Mr. Markovich.

### EVENTS AT THE HCF

The court discusses plaintiff's claims together that are based upon events alleged to have occurred at the HCF.  However, plaintiff does not allege facts establishing that his claim against the librarian at the HCF is properly joined with his claims against other HCF employees, or with any of his claims in his Amended Complaint against defendants employed at other prisons.

### Count VII

In his count designated as Count VII, plaintiff asserts that his due process rights were violated at the HCF.  In support, he alleges as follows.  On November 17, 2010, he requested time in the prison law library, but time was not scheduled until December 15, 2010, and then he was given only an hour.  After he complained, "scheduling was speeded (sic) up but was still not sufficient."  His "filings with various courts, including this petition," were filed with "deficiencies that would have otherwise not been present" had he been provided with sufficient access to the law library. Defendant Mrs. Rhine is "charged with law library scheduling."

In his Amended Complaint, plaintiff cures one deficiency in this claim by changing defendants.  However, he has not cured two other deficiencies discussed in the screening order: (1) he does not allege facts to support a due process violation and (2) he does not allege sufficient facts to support a claim of denial of access to the courts.  Plaintiff's allegations that he requested and was scheduled for library time suggest that there was some procedure available that he followed.  They do not indicate that any additional procedure was mandated by the due process clause.  Nor do they specify what particular element of any process that plaintiff believes was due was denied.

Plaintiff avoids asserting this as a denial of court access claim.  Nevertheless, he baldly proclaims in his Response that "his access to the Court were (sic) frustrated and impeded."  As he has been repeatedly informed, conclusory statements are not sufficient to present a claim for relief.  Plaintiff still fails to adequately identify any non-frivolous action that was filed by him and then explain how that very action was actually prejudiced, that is

dismissed or otherwise seriously impeded, as a result of his lack of access to the HCF law library.  The fact that he had some pleadings or letters returned unfiled by the Kansas Court of Appeals does not establish that a particular non-frivolous action filed by him was actually prejudiced by a lack of time in the law library.  He argues in his Amended Complaint that his "filings with various courts, including this petition, were filed with deficiencies" that would not have been present if he had adequate access to a law library. Certainly, in this case the court has informed Mr. Markovich of, as well as given him the opportunity to, cure deficiencies.  Here, he has been required to allege additional, sufficient facts; not to provide a legal brief.  His inability to present facts to support his claims is not shown to be the result of too little time in the prison law library.

### Count IX

In his count designated as Count IX, plaintiff asserts cruel and unusual punishment at the HCF.  In support, he alleges the following.  He asked defendant Unit Team Counselor Kidd why he was housed in "max" and was erroneously told there was no room in "min." He later asked again and Kidd said he "was waiting on approval from mental health."  Plaintiff's mental health counselor told him that no approval was needed or existed.  Plaintiff wrote to Kidd's supervisor who did not respond.  However, a day later plaintiff was transferred to minimum.  He spent two months in a max unit.

While plaintiff cured the lack of personal participation defect in this claim by changing defendants, he did not cure the defect of

failure to state a federal constitutional claim.  He alleges no additional facts showing that any condition of his confinement in the max unit at the HCF during the time in question amounted to cruel and unusual punishment.  His claim that defendant Kidd provided him with untrue reasons for his initial placement does not evince a violation of the Eighth Amendment.  Under the standards previously discussed herein, the court has no difficulty finding that plaintiff fails to allege facts regarding his initial assignment to max at the HCF, which show either cruel and unusual punishment or a denial of due process.  Were this claim liberally construed as one for retaliation, it would fail for the same reasons.  Plaintiff's statement that the classification procedure was used for harassment is completely conclusory.  It is certainly not a statement of facts showing that "but for" the improper motive of defendant Kidd, he would not have been assigned to and held for a limited time in the maximum unit upon his arrival at the HCF.

### Count X

In his count designated as Count X, plaintiff asserts that his right to freedom of speech was violated at the HCF.  He claims that defendant Kidd "threaten[ed] to hold him in a max unit for utilizing the grievance procedure and making other requests."  The allegations upon which he bases this claim follow.  In November 2010 plaintiff was reclassified back to minimum and transferred from ECF to HCF.  New arrivals at HCF were generally housed in the max unit for a few days until a spot opened in minimum.  After a few days and other inmates being transferred to minimum, plaintiff "started writing requests" to defendant Kidd.  Weeks passed without an answer, so

plaintiff wrote Kidd's supervisor.  That same day, he was called to Kidd's office, who gave "unacceptable answers" and stated "the more time I spend answering your pidly (sic) requests the less time I have for the more important issues, like getting you to minimum." Plaintiff "understood this threat and decided not to make any more written requests."

Plaintiff has alleged no facts suggesting that his right to petition the court was actually impeded or violated during this period.  His allegation that defendant Kidd verbally threatened to hold him in a max unit for utilizing the grievance procedure and making other requests is not supported by any chronology of events. It does not, standing alone, amount to facts showing that "but for" a retaliatory motive on the part of defendant Kidd, plaintiff would not have been placed and held in the max unit.  Plaintiff's own allegations indicate that new arrivals at the HCF were generally housed in the max unit until a spot opened in minimum.  They also show that he was informed of Kidd's motivation by Kidd: a spot in minimum was unavailable, approval by Mental Health had not been obtained, and that even though getting him moved to minimum was important it took time.  Plaintiff's hearsay statements as to what others said regarding Kidd's motivation, are not competent evidence to support an allegation that Kidd was wrong or lying.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

In the Amended Complaint, plaintiff states that he has not utilized the prison grievance procedures as to Counts V, VII, IX, and X.  Under 42 U.S.C. § 1997e(a), "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison

conditions in federal court."   Id.   Section 1997e(a) expressly
provides:

> No action shall be brought with respect to prison
> conditions under section 1983 of this title, or any other
> Federal law, by a prisoner confined in any jail, prison,
> or other correctional facility until such administrative
> remedies as are available are exhausted.

Id.   This exhaustion requirement "is mandatory, and the district
court [is] not authorized to dispense with it."   Beaudry v.
Corrections Corp. of Am., 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003),
cert. denied, 540 U.S. 1118 (2004); Little v. Jones, 607 F.3d 1245,
1249 (10th Cir. 2010).   The "inmate may only exhaust by properly
following all the steps laid out in the prison system's grievance
procedures."   Little, 607 F.3d at 1249 (citing Woodford v. Ngo, 548
U.S. 81, 90 (2006).   "An inmate who begins the grievance process but
does not complete it is barred from pursuing a § 1983 claim . . . ."
Id. (citing Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir.
2002)).   While failure to exhaust generally is an affirmative
defense and a plaintiff is not required to plead it in the
complaint, when that failure is clear from materials filed by
plaintiff, the court may sua sponte require plaintiff to show that
he has exhausted.   See Aquilar-Avellaveda v. Terrell, 478 F.3d 1223,
1225 (10th Cir. 2007)(acknowledging district courts may raise
exhaustion question sua sponte, consistent with 42 U.S.C. §
1997e(c)(1) and 28 U.S.C. §§ 1915 and 1915A, and dismiss prisoner
complaint for failure to state a claim if it is clear from face of
complaint that prisoner has not exhausted administrative remedies).

The KDOC makes a four-step grievance procedure available to its
inmates, which must begin with an attempt at informal resolution,
and thereafter proceed through three "levels of problem solving."

KS ADC 44-15-101, -102.  The second level is a grievance submitted to a Unit Team member.  KS ADC 44-15-101(d).  Next, the inmate may appeal to the Warden, and ultimately to the Secretary of Corrections.  Id.  Plaintiff's conclusory statements that challenges to classification are not allowed and that he has been "threatened for using the procedure" are not supported by sufficient facts to show that these remedies were ineffective.  He does not show that he grieved a claim of retaliation that was rejected at all levels as a challenge to classification.  Accordingly, the court finds that plaintiff's unexhausted claims are subject to being dismissed without prejudice pursuant to 28 U.S.C. §§ 1915A, 1915(e)(2)(B)(ii), and 42 U.S.C. § 1997e(c)(1), based on plaintiff's failure to exhaust available administrative remedies prior to filing this action. However, again in the interest of judicial economy, these claims are dismissed not for this reason alone but for the other reasons stated herein as well.

**OTHER PENDING MOTIONS**

The court has considered plaintiff's Motion for Appointment of Counsel.  Plaintiff is not entitled to representation by counsel in a civil action for money damages.  This motion is moot, as is his motion to serve defendants (Doc. 8).

Plaintiff's Motion for Reconsideration of the court's denial of his request for "inmate records" has been considered and is denied. Plaintiff still fails to explain how he sought any records through appropriate channels or show that he followed procedural rules so that this court is now required to rule upon a motion to compel production of any pertinent records.  In any event, this matter is

now moot.

Plaintiff's objections to his being required to make payments upon the filing fees assessed in multiple cases have already been thoroughly considered and rejected.  He alleges no facts and makes no legal arguments, which convince this court that his additional objections have any merit.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff's motion to amend complaint (Doc. 7) is granted and the clerk is directed to file plaintiff's Amended Complaint.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Proceed Without Prepayment of Fees (Doc. 2) is granted, he is assessed the full filing fee herein, and the remainder due is to be collected by payments deducted automatically from his institutional account as authorized by 28 U.S.C. § 1915(b)(1).[4]

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Doc. 7), motion for reconsideration of denial of request for records (Doc. 7), objections to fees (Doc. 7), and motion to serve defendants (Doc. 8) are denied.

**IT IS FURTHER ORDERED** that this action is dismissed and all relief is denied on account of plaintiff's failure to state sufficient facts to support a claim of federal constitutional violation, and for failure to comply with orders of the court regarding improper joinder.

---

[4]     Plaintiff has already submitted partial payments to the court in the amounts of $60.89 and $217.33.  Pursuant to §1915(b)(2), the Finance Office of the facility where plaintiff is confined is directed by copy of this Order to collect twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until the filing fee has been paid in full.  Plaintiff is directed to cooperate fully with his custodian in authorizing disbursements to satisfy the filing fee, including but not limited to providing any written authorization required by the custodian or any future custodian to disburse funds from his account.

The clerk is directed to send a copy of this Memorandum and Order to the finance officer at the institution where plaintiff is currently confined.

**IT IS SO ORDERED.**

Dated this 9 th day of February, 2012, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge